[No. D015134. Fourth Dist., Div. One. Nov. 23, 1992.]

In re ESMERALDA B. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
M. LOURDES B. et al., Defendants and Appellants.

COUNSEL

M. Elizabeth Handy, under appointment by the Court of Appeal, and James G. Dunn for Defendants and Appellants.

Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, and James H. Wellman, Deputy County Counsel, for Plaintiff and Respondent.

Judith Digennaro, under appointment by the Court of Appeal, for Minors.

OPINION

**WORK, J.**—M. Lourdes B. (Maria) and Neal B. appeal the jurisdictional and dispositional dependency orders entered after the court found their eight-year-old daughter, Esmeralda, and her younger siblings were in danger of future serious physical injury because their parents were unable to adequately supervise or protect them. (Welf. & Inst. Code,[1] § 300, subd. (b).) Because we conclude there is no evidence to support a finding of either past parental supervision inadequacy or any reasonable basis for the juvenile court's conclusion that the parents are incapable of or unwilling to adequately protect their children in the future, we reverse the dependency orders.

I

Maria and Neal are married and reside with their four children, Esmeralda, born in 1983, Travis, born in 1987, and twins Arlen and Ariana, born in 1990. On April 16, 1991, Maria, who does not speak English, took Esmeralda to see their family pediatrician, Dr. Gene Nathan, who does not speak Spanish, because Esmeralda had found a dried blood spot in her panties when she awoke during the night. Dr. Nathan's pelvic examination of Esmeralda revealed an injury to the posterior fourchette and a small tear of the hymen. When questioned, Esmeralda stated she had fallen off her bicycle the previous Saturday. Suspecting this was not the cause of her injury, Dr. Nathan referred them to a specialist at children's hospital. There, Dr. Bronwen Anders, a pediatrician, examined Esmeralda and photographed the injury through the use of a colposcope. Dr. Anders found a torn hymen posterior fourchette and external abrasions she believed were nonaccidental. Esmeralda and her parents informed Dr. Anders she had fallen off her bicycle once ten days before and again three days before the examination,

---

[1]All statutory references are to the Welfare and Institutions Code.

but Dr. Anders concluded the injuries were no more than two days old and were likely to have been caused within twenty-four hours. Dr. Anders, believing the injury was most probably caused by molestation, informed Maria and Neal of her conclusion and reported the matter to the child protective services hotline. The children were immediately removed from their parents and placed in other facilities.

On April 19, 1991, the department of social services (Department) filed petitions alleging the four children were minors falling under the provisions of section 300, subdivision (d) in that they had been sexually abused or were in danger of sexual abuse by a family or household member and that Esmeralda's siblings were at risk because of that relationship. (§ 300, subd. (j).) The accusation of molest by persons in Esmeralda's home or family, was dismissed and the section 300, subdivision (d) allegations replaced by charges that Esmeralda had suffered or was likely to suffer serious physical harm as a result of her parents' inability to adequately supervise or protect her. (§ 300, subd. (b).)

II

Esmeralda was called as the Department's first witness. Over her parents' objection, she testified in chambers outside the presence of her parents at the request of her counsel who believed she might be more truthful if her parents were not present. For three and one-half hours she was questioned extensively by the court and by each of the four attorneys involved in this case, the lawyers for Maria, Neal, Esmeralda and the Department. This examination is reported in 130 pages of transcript. Esmeralda appeared candid in her remarks, responsive to the questions and absolutely adamant that she was aware of no "bad touching" in her vaginal area. Further, she described her relationship with her immediate and extended family members who from time-to-time resided in her home, as positive. She denied any molestation had ever occurred to her knowledge. She stated she never slept in a bedroom with her father or any male, and that "in my home girls play with girls and boys play with boys." It is noteworthy that her testimony during this intensive examination outside the presence of her parents was consistent with the history she had given throughout this incident.

Social worker D'Alicia Marron was examined concerning her report, which was received in evidence. She first interviewed Esmeralda the day after the incident was reported. Esmeralda always denied that any "bad touching" had occurred. Marron had investigated the incident by interviewing other members of the family. She found Esmeralda had no fear or discomfort about any member of her family, understood the difference

between "good and bad touching" in the context of sexual abuse, was not hesitant nor did she attempt to conceal information, appeared well-adjusted and calm and had a good relationship with her mother and father. Finally, she stated that her investigation of Esmeralda and her family *made her believe there was nothing the parents should have done to prevent the injury from happening. Further, she believed the parents would act appropriately to prevent such an incident from happening in the future and, most significantly, could not think of any action the parents had taken which was unreasonable or was neglectful to Esmeralda or her siblings.*

The Department rested its case after Marron testified. At this juncture, the court had before it only the extensive examination of Esmeralda denying any sexual molest and corroborating the caring, protective parental atmosphere in her home, evidence supporting a finding of sexual molest by an unidentified perpetrator from Dr. Anders, and a social report prepared by Marron who also testified she had found no evidence of any neglect or unreasonable activities of the parents which was causally related to the injury (which she assumed for the purpose of her investigation to be a sexual molest) and was satisfied the family relationship was healthy, posing no risk to Esmeralda were the court not to take jurisdiction.

At this point the parents moved to dismiss for lack of evidence that Esmeralda's injury, even if caused by molest, was related to any irresponsible activity on her parents' part, lack of supervision or neglect. The motion was denied, the court appearing to adopt the argument of Esmeralda's counsel and the Department that evidence suggesting a single incident of sexual molest from an unknown perpetrator was sufficient to sustain a petition under section 300, subdivision (b) which requires a finding the minor had suffered or is at substantial risk to suffer serious physical harm "as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the minor."

■ In the absence of any evidence of neglect or wrongdoing on the parents' part, the court was urged to rely on the presumption in section 355.1 to establish the substantial evidence of the parents' failure to adequately supervise or protect the minor. That section does establish a presumption; however, it is not applicable here for two reasons. First, it applies only "[w]here the court finds, *based upon competent professional evidence*, that an injury . . . sustained by a minor, of such a nature as would ordinarily not be sustained except as the result of the unreasonable or neglectful acts or omissions of either parent, . . . that evidence shall be prima facie evidence that the minor is a person described by subdivision (a), (b), or (d) of Section 300." (§ 355.1, subd. (a), italics added.) Here, no professional or other

person testified the single incident, even if a sexual molest, was such that ordinarily it does not occur except as a result of unreasonable or neglectful acts of either parent. Esmeralda was a second grade student and was not always under the direct observation of her parents and, on these facts, there is nothing about a single incident of sexual molest which suggests it ordinarily would not have occurred except for inadequate parental supervision or neglect.

Second, even had there been evidence to establish the predicate for the presumption, it is not one which affects the burden of proof, but only the burden of producing evidence (§ 355.1, subd. (c); *In re James B.* (1985) 166 Cal.App.3d 934, 937 [212 Cal.Rptr. 778]) and only survives until there is rebuttal evidence submitted. Here, that evidence was submitted through the Department's own social worker and absent any evidence to support a finding under section 300, subdivision (b), the petition should have been dismissed.

In any event, after the motion for dismissal was denied the parents introduced testimony from several witnesses, family members and interviewing social workers. Essentially, the evidence ranged from expert opinion from Dr. Jess Diamond, a pediatrician, that the injuries were consistent with the history of a straddle injury resulting from a fall from a bicycle as described by Esmeralda and various percipient witnesses, to evidence there was no inadequate parental supervision. Unlike the usual case of child molestation, the Department's evidence and that introduced by the parents shows Esmeralda never once complained of a sexual molest, never deviated from her claim to be unaware of any such "bad touching" in spite of extensive interviewing by several social workers, physicians and child abuse specialists, and never exhibited reluctance to discuss her history openly and at length nor showed emotional or psychological traits commonly observed in children who have been sexually abused.

The social worker employed at Children's Hospital who interviewed Esmeralda and her parents immediately following Dr. Anders's examination, found her relaxed with a demeanor that indicated she was unafraid and not being secretive. The history she obtained from Esmeralda was that she had fallen from a bicycle, that same night she had awakened to go to the bathroom and while there had noticed dried blood in her panties. The social worker stated neither Esmeralda nor her parents reacted inappropriately when she advised them Dr. Anders suspected the injury may have been caused by molestation and the parents exhibited appropriate concern for Esmeralda's welfare. She denied any "bad touching" and did not appear to be evasive. Although this social worker did not converse directly with Maria

because of Maria's inability to speak English, she testified the mother's facial expressions indicated concern for Esmeralda. Moreover, when Esmeralda advised the social worker that if anyone had inappropriately touched her genitals she would tell her parents, she stated it firmly and her demeanor seemed appropriate.

## III

In final argument, the Department's counsel solely argued that although there was conflicting evidence, both expert and otherwise, as to how Esmeralda's injury occurred, the court should resolve the conflict by finding Esmeralda suffered a detrimental condition "that is of the nature of the nonaccidental trauma indicative of molest" and asked the court to make a true finding on the petition on that basis.

In contrast, the parents' counsel called the court's attention to the language of section 300, subdivision (b), arguing there was no evidence, opinion or otherwise, to establish the element the parents did something inappropriate, negligent or unreasonable in the supervision and care of Esmeralda causally related to whatever incident caused the injury or to suggest there was a "substantial risk" she will suffer future physical harm from their supervisoral inadequacies.

Esmeralda's counsel argued at length that the court should resolve evidentiary conflicts in favor of finding Esmeralda's injuries occurred as a result of sexual molest at an unidentified place by an unidentified perpetrator. Counsel asked the court to rely on the section 355.1 presumption, suggesting the parents have not met the burden of rebutting. Although conceding there had been "in all probability" a bike fall the day Esmeralda discovered dried blood on her panties and reported it to her mother, counsel dismissed it as insignificant, a "non-event." On the critical issue of parental supervision and protection, she stated:

"The [parents] are really nice people, . . . [m]y experiences with these people have been very, very positive. My office's experiences with these people have been *very, very positive.* They're *very appropriate with their family. It is a wonderful family. I think they love their children very much. They're appropriate with their children.*

"*They have—an enormous extended family floats in and out of this house. They're lucky that they have that benefit of having that extended family. Most of us don't.*" She believed, however, the father inappropriately had determined sexual molestation probably did not occur, based on Esmeralda's

consistent denials and her open, happy normal demeanor, his interviewing all male family members with whom she had possible contact, Dr. Diamond's diagnosis and the fact that the colposcopic photographs identified by Dr. Anders as of Esmeralda showed no injuries. (Although counsel noted Esmeralda's mother also did not believe the molestation had occurred, she did not feel this was inappropriate because the mother was emotional and loved her child enormously.) Relating to Esmeralda's own testimony, counsel stated:

"Well, frankly, your Honor, my client's telling the truth. I think that my client has been interviewed too many times. I think there's some outside factors that maybe [sic] influencing it, but I believe my client has told the truth. The truth is what my client percieves [sic] to be the truth. That's what she is told." Counsel then suggests that just because Esmeralda is happy, did not seem to be having any problems, that does not mean there is not a *possibility* a molestation may have occurred which she found pleasurable.

In closing argument, the Department's counsel urged the court to rely on the section 355.1 based on Dr. Anders's testimony and argued the parents had not carried their burden to overcome its presumption.

In announcing its decision, the court discussed the conflicting evidence concerning the physical cause of Esmeralda's injury, whether molest or accidental, and resolved it in favor of molest.[2] However, the court did not point to any evidence supporting a finding the molest, if it occurred, resulted from the parents' failure or inability to adequately supervise or protect her. ■ Nor did the court make any such finding, instead concluding "that [Esmeralda] needs the protection of the juvenile court because of the actions of the parents subsequent to the injuries." There is no substantial support for this conclusion.

The postinjury "action" of the parents consisted of seeking immediate medical attention for Esmeralda, cooperating with the treating and clinical physicians and various social workers investigating the cause of injury and their family history, investigating the possibility that a molestation may have occurred by some member of their extended family, seeking independent expert medical advice from a qualified pediatrician, Dr. Diamond, who concluded Esmeralda's injury was consistent with one likely to have resulted from the bicycle accident documented by Esmeralda and several witnesses,

---

[2] The court misconstrued the character of the section 355.1 presumption, stating the defense had not overcome the rebuttable burden imposed by section 355.1, subdivision (a). However, it stated it would find the child had been molested from its view of the evidence even without employing the presumption.

providing prompt therapy for Esmeralda at their own expense when the proceedings began, and cooperating fully with the Department and Esmeralda's counsel at all times. This summary of the parents' postinjury conduct is documented by the social study compiled by the Department and as recited by Esmeralda's counsel.

However, the court commented that because the father had come to believe that Esmeralda's injury was not caused by a sexual molest, for some reason not explained by evidence in this record, the parents were not able to provide her supervision or protection adequate to avoid future serious physical injury.

We recognize that denial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision. This most commonly is significant in cases where a person having been adjudicated to have perpetrated sexual or physical abuse on a minor in his custody, vigorously denies the abuse and, because of this denial, is likely to be resistant to therapy or treatment necessary to effect behaviorial changes to insure the minor will not be a risk if placed in his custody. That is not the case here. This father was never suspected of causing this injury once the investigation began. Esmeralda and her siblings had been in the physical custody of both parents for some time before the jurisdictional hearing without incident, and the Department's social investigators found they were not at risk.

On this record, we conclude there is no substantial evidence to support the jurisdictional findings under section 300, subdivision (b) or section 300, subdivision (j), and they are reversed.

Kremer, P. J., and Huffman, J., concurred.